## DE BRIDGES *vs.* HUESTON,

### *Twelfth Judicial District Court, June, 1857.*

#### STREET REPAIRS.

Under the Consolidation Act of San Francisco, notice must be given to the property holder to repair the street himself, before he can be held liable and his property seized for any assessment by virtue of repairs made.

.This was a bill to enjoin the Sheriff from proceeding to sell a lot on California street, between Davis and Drumm, which the Sheriff had advertised for sale under a warrant issued by the Police Judge, and countersigned by the Superintendent of Streets and Highways, to coerce the payment of $1082, by a sale of the lot, in favor of the defendant, Hueston, a Street Contractor. The warrant was dated on the 26th of March, 1857, and was issued under the provisions of the 50th section of the Consolidation Act, which provides as follows :

"If such delinquent assessment or assessments shall remain unpaid for five days thereafter, the Police Judge shall, on the application which it shall be the duty of the Superintendent to make, carefully examine the aforesaid record and also the record of assessments, and finding the proceedings to have been legal and free from fraud on the part of the Contractor, shall issue his warrant, to be signed by him and countersigned by the said Superintendent, directed to the Sheriff of said city and county, briefly setting forth the delinquent assessment or assessments, the amounts thereof remaining unpaid, the name or names of the owner or owners, if known, and an accurate description of the property liable therefor, and commanding the said Sheriff to collect the amount of such delinquent assessment so remaining unpaid, with costs, including his legal fees, and fifteen dollars, to be collected and paid over to the Superintendent for his services, and also five per cent. damages upon the amount remaining due to the Contractor, by sale of the property liable therefor, and described in said warrant, in the same manner as real estate is required by law to be sold upon execution, and out of the moneys made, to pay over the amount or amounts due to the Contractor, with the said five per cent. damages ; which warrant, after having been recorded by the Superintendent in full in his office, shall be delivered to the Sheriff."

The 51st section gives the warrant the force and effect of an execu-

De Bridges *vs.* Hueston.

tion upon a judgment or decree entered up in a Court of Record, and makes the deed to be executed by the Sheriff *prima facie* evidence of the facts recited, after requiring the Sheriff briefly to " refer to the essential steps previous thereto.''

The case, made by the pleadings and evidence was, that at the request of all the owners of property on each side of California street, from the center of Davis to the center of Drumm, with the single exception of the plaintiff, in October, 1856, petitioned the Board of Supervisors, then consisting of the Justices of the Peace, to advertise for sealed proposals to fill in, sewer and plank the street, under the provisions of the 4th Chapter of the Consolidation Act. The petition was granted, and the contract awarded to the defendant, Hueston, as the lowest bidder. A contract was entered into between him and the present Superintendent to do the work, and approved by the present Board of Supervisors, and the work satisfactorily performed under it. All the parties who petitioned have paid.

The plaintiff is a citizen and resident of France, and one of the firm of Pioche, Bayerque & Co. acts as his agent. The agent did not forbid the work in front of the plaintiff's property, but denied his authority to sign the petition with the other property holders. The Bill admits that the plaintiff was willing to keep in repair the filling and planking of the street in front of the lot, at his own expense, " *but not fill, sewer and replank the same.*"

It was in proof that the street could not be sewered unless it was filled in front of this lot, which was situated about the middle of the block.

The bill charged that the work was not performed in accordance with the provisions of the sections 40, 41, 42, 43, 44, and 53, of the Act, as recited in the contract, and sets forth, specifically, 1st. that there was no proper publication, so as to give the property holders an opportunity to protest against the work : 2d. that the petition by the property holders was not made in the manner provided : 3d. that no estimate of the cost of the work had been made public before the order to make the improvements had been made by the sureties, and that the contract is void for want of such proceedings : 4th. that the Superintendent failed to fix the time, within which, after the contract was signed, to permit the owner of the lot to perform the work himself,

at his own expense, as required by section 54: 5th. that the Contractor failed to make a return of the performance of his work, under the contract, duly verified : 6th. that the Superintendent, after issuing the warrant, did not record it, in a book to be kept for that purpose : 7th. that the Police Judge issued the warrant wrongfully because these several pre-requisites had not been complied with.

The bill charges that by reason of the operation of the deed from the Sheriff, a cloud will be created upon the title to the lot, and therefore prays an injunction to restrain the sale.

The answer denies specifically the allegations respecting the irregularities in making the contract; and, as respects the 3d objection, that no proper estimate was made of the cost of the work, it avers, that the "said property holders, so petitioning as aforesaid, made a careful estimate of the costs of said work and improvements, which said estimate was acquiesced in, approved and adopted by the said Superintendent of Public Streets and Highways, and that said estimate was duly made public before the said order was passed."

The answer also sets up a claim, for work and labor, upon an implied promise to pay the value of such improvement. This claim was not passed upon by the Court, and, after the decision, was withdrawn by stipulation.

Some constitutional objections were raised, in argument, by plaintiff's counsel, against the provisions of the Act relating to the constitution of the Board of Supervisors, composed of the Justices, who took the preliminary steps in awarding the contract, and also that the mode adopted to force the payment, was to take property without due process of law.

These constitutional objections were not decided by the Court. The only irregularity noticed in the decision was the 4th, namely : that the Superintendent failed to fix the time within which, after the contract was issued, to permit the owner of the lot to perform the work himself, at his own expense, as required by section 54.

· The decision was made on this point alone, although the bill avers that the plaintiff was not willing " to fill, sewer and replank the same," (the street in front of the lot.)

There is no averment of excessive charges for performing the work, or of an unworkmanlike manner in executing it.

Burnell *vs.* Gregory.

*Parsons & Sawyer*, for plaintiff.

*Gregory Yale*, for defendant.

NORTON, J.—The plaintiff's counsel in this case has gone very deeply into the question of the constitutional rights of parties, which are of serious import; but which I decline to consider, because the case must be decided upon other grounds. The object of the provisions of the Consolidation Act, in respect to street repairs, is, that the city is to be relieved from expense, and that property holders shall be compelled to pay. It provides that, after careful assessments, the property holders are to be called upon, notified to do the work or have it done, and, on default, that they shall suffer the severe consequences of having their property sold to satisfy the claims of such persons as do the work, &c. In this case, there are many objections to the regularity of the proceedings, and it appears that there was no notice given to the property holder to do the work himself. On the other hand, it is claimed that the property holder stood by and saw the work done, and, therefore, has no right to ask the aid of chancery. The decisions, however, as to this latter point, have been based upon grounds which do not arise in the present case. On account of the want of notice, and consequent non-compliance with the requirements of the Consolidation Act, the injunction restaining the sale is made perpetual.